**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000097
20-JAN-2017
08:13 AM**

NO. CAAP-13-0000097

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

THOMAS GRANDE, Appellant-Appellee, v. HENRY ENG, DIRECTOR,
CITY AND COUNTY OF HONOLULU DEPARTMENT OF PERMITTING AND
PLANNING; CITY AND COUNTY OF HONOULULU, DEPARTMENT OF PERMITTING
AND PLANNING, Appellees-Appellees, and MIGUEL RAMIREZ AND
VALERIE RAMIREZ; STATE OF HAWAII DEPARTMENT OF LAND AND NATURAL
RESOURCES, Appellees-Appellants, and JOHN DOES 1-10,
JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10,
AND DOE GOVERNMENTAL ENTITIES 1-10, Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 08-1-1604-08 (KKS))

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

Appellees/Defendants-Appellants Miguel and Valerie

Ramirez (the **Ramirezes**) and the State of Hawai'i Department of

Land and Natural Resources (**DLNR**) (collectively, **Appellants**)

appeal from the Amended Judgment in favor of Appellant/Plaintiff-

Appellee Thomas Grande (**Grande**) and against Appellants (**Amended

Judgment**), which was filed on January 18, 2013, in the Circuit

Court of the First Circuit (**Circuit Court**).[1]

---

[1]    The Honorable Karl K. Sakamoto presided.

I.    BACKGROUND

DLNR is the owner of agriculturally-zoned property in Waimanalo, Hawai'i, that is leased to the Ramirezes.  The Ramirezes filled and graded an approximately 5,000 square foot section of the property (the **Graded Area** or **Landfill**), allegedly without obtaining proper grading permits.  Grande, a makai neighbor, believes that the graded area poses a danger to his home.  On November 26, 1999, pursuant to a formal complaint by Grande against Appellants, the City and County of Honolulu (the **City**) Department of Planning and Permitting (**DPP**) issued a Notice of Violation to the Ramirezes and DLNR for, *inter alia*, grading without a permit.  On January 21, 2000, DPP designated the subject violations as "corrected" by virtue of Miguel Ramirez becoming a "cooperator" with Windward Oahu Soil and Water Conservation District (**WOSWCD**).[2]  In the meantime, the Ramirezes reportedly continued to fill and grade the Graded Area without

---

[2]    Revised Ordinances of Honolulu (ROH) § 14-13.5(d) allows the department (here, the DPP) enforcing the Honolulu Grading Ordinance to cede regulatory jurisdiction over the ordinance to soil and water conservation districts, under certain circumstances.  Specifically, ROH §§ 14-13 to 14-16 do not apply to:

> Land which is being managed in accordance with soil
> conservation practices acceptable to the applicable
> soil and water conservation district directors, and
> that a comprehensive conservation program is being
> actively pursued for the entire area in the program
> and that the conservation program with appropriate
> modification is reviewed and accepted by the soil and
> water conservation district directors periodically but
> not less than once every five years and shall be made
> available to the city and county; provided, however,
> that no grading which, in the opinion of the chief
> engineer, endangers abutting properties or which
> alters the general drainage pattern with respect to
> abutting properties shall be commenced or performed
> without a grading permit[.]

ROH § 14-13.5(d) (1983).

obtaining a permit. Grande again contacted DPP, as well as WOSWCD, to determine which of the two agencies had regulatory jurisdiction. According to Grande, DPP claimed that WOSWCD had jurisdiction, but WOSWCD informed him that they "are not a regulatory agency" and that their "relationships are built on a system of voluntary compliance and cooperation."

On November 25, 2003, Grande filed a lawsuit in the Circuit Court of the First Circuit, Grande v. Fonoimoana, Civil No. 03-1-2352-11 (**Grande v. Fonoimoana**), seeking declaratory and injunctive relief to require DPP to, *inter alia,* assume regulatory jurisdiction over the Graded Area. DLNR, Ramirezes, DPP, and WOSWCD were all named defendants. Grande attests that, at a December 13, 2003 meeting, DPP informed Grande that it intended to seek dismissal of the suit on the grounds that Grande failed to exhaust administrative remedies (*i.e.,* consideration by the Director of DPP). On December 18, 2003, Grande submitted a "formal complaint" to DPP, which included opinion letters from two engineers in support, and asked DPP to enforce pertinent grading ordinances and to otherwise give immediate attention to the illegal dumping and grading of the subject property. On December 23, 2003, Deputy Corporation Counsel for the City, Lori Sunakoda (**Sunakoda or Corporation Counsel**), wrote to Grande informing him that his complaint would be treated as a petition for a declaratory ruling and processed in accordance with the DPP Part 1 - Rules of Practice and Procedure (initially effective October 24, 1993, with various amendments) (**DPP Procedural Rules**) governing declaratory rulings. On January 21, 2004, Grande wrote

to DPP confirming that the City would be treating his complaint as a petition for declaratory relief, but asserting that this treatment is "not a waiver of any rights [he] may have against the City and County in the pending litigation or in any other proceeding."

On February 18, 2004, Acting Deputy Director of DPP Kathy Sokugawa, signing on behalf of DPP Director Eric G. Crispin (**Crispin**), issued a decision on the complaint, finding "insufficient information" for DPP to conclude that the Landfill endangers abutting properties or alters general drainage patterns with respect to abutting properties, and stating that, accordingly, the grading activity in connection with the Landfill is subject to the jurisdiction of WOSWCD. On March 19, 2004, Grande requested reconsideration under the DPP Procedural Rules Rule § 4-3(b). On August 19, 2004, Crispin sent Grande another letter decision denying his request for reconsideration.

On September 20, 2004, Grande timely submitted an appeal of the DPP Director's February 18, 2004 decision and the DPP Director's August 19, 2004 denial of reconsideration to the Zoning Board of Appeals (**ZBA**), citing the City's Department of Land Utilization (**DLU**) Part 3 Rules of the Zoning Board of Appeals (**ZBA Rules**) Rule 22-1.[3] On October 29, 2004, DPP moved to dismiss Grande's appeal on jurisdictional grounds. In a November 24, 2004 declaration, Grande informed the ZBA that Corporation Counsel had initially told him that an appeal was to

---

[3]     It appears that these administrative rules still reference the DLU, rather than the DPP, notwithstanding the departmental reorganization discussed in Section III.B., below.

be made before the ZBA, but subsequently informed him that the City's Rules of the Engineering Division for Drainage, Flood and Pollution Control, and Grading, Soil Erosion and Sediment Control Programs of the Department of Public Works (adopted September 16, 1994) (**DPW Engineering Rules**) would apply, and that a DPP hearings officer would be appointed to consider Grande's appeal.[4] On April 7, 2005, the ZBA granted DPP's motion to dismiss on the grounds that the ZBA's jurisdiction is limited to ROH Chapters 21 (zoning) and 22 (subdivision).[5]

On May 23, 2005, Sunakoda wrote to the presiding judge in Grande v. Fonoimoana, informing the court that, pursuant to an agreement between Grande and Sunakoda:

> Grande previously granted the City an open-ended extension of time to file its Answer to the Complaint, based upon the City's representations that if [Grande] were to submit a request to the [DPP] Director requesting an administrative declaratory ruling, and (depending on the outcome of [Grande]'s request for declaratory ruling), if [Grande] wished to challenge such ruling, pursuant to DPP's administrative rules governing Revised Ordinances of Honolulu 1990 Chapter 14, that [Grande] would be afforded the remedy consisting of a contested case hearing, provided for in DPP's administrative rules. As communicated previously to [Grande], DPP has been moving forward with the necessary arrangements for funding, selection and retention of a hearings officer to preside over the contested case hearing.

---

[4] It is undisputed that, after the DPP Director's letter decisions, discussions took place between Corporation Counsel and Grande regarding the available administrative remedy for challenging the letter decision, and the City determined that Grande's remedy would be via a petition for appeal and contested case hearing, pursuant to the DPW Engineering Rules.

[5] The City's Grading Ordinances are found in ROH chapter 14, which is available at http://www.honolulu.gov/rep/site/ocs/roh/ROH_Chapter_14a10_19.pdf.

On July 20, 2007,[6] DPP moved to dismiss the City parties from <u>Grande v. Fonoimoana</u>, based on Grande's failure to exhaust administrative remedies. The Ramirezes joined in the motion to dismiss, noting that "[m]atters of enforcement of grading ordinances [are] in the exclusive province of the [DPP] and that appeal should be permitted to 'run its course' prior to judicial review." On October 16, 2007, the court dismissed the City parties from <u>Grande v. Fonoimoana</u>, without prejudice to refiling the claims after a contested case hearing.

After the DPP hearings officer was engaged, on February 4, 2008, the Ramirezes and DLNR sought to intervene in the contested case hearing, citing § 00-01-15 of the DPW Engineering Rules,[7] as their "interest in the subject administrative proceedings and contested case hearing is clearly distinguishable from that of the general public." The hearings officer granted their request for intervention and the Ramirezes and DLNR actively participated in the proceeding, attended all hearings, and submitted briefs on legal matters. On April 1, 2008, Hearings Officer Ryan K. Harimoto (**Harimoto** or **DPP Hearings Officer**), *sua sponte*, raised the issue of subject matter jurisdiction. All parties submitted memoranda on the issue;

---

[6]     It appears from the record that, on May 3, 2006, the City agreed to the Director's review of supplemental information from Grande in support of his request for reconsideration, thereby putting the contested case hearing proceedings on hold. On October 23, 2006, the new DPP Director, Henry Eng, found that the supplemental information failed to raise any new concerns and was insufficient to warrant reconsideration of the DPP's prior positions and decisions.

[7]     DPW Engineering Rules § 00-01-15(c)(1) grants intervention to "an applicant who demonstrates that such applicant will be so directly and immediately affected by an adverse decision that such applicant's interest in the proceeding is clearly distinguishable from that of the general public."

however, the DPP Director took no position. On July 3, 2008, Harimoto entered Findings of Fact, Conclusions of Law, and Order Regarding Jurisdiction (**Dismissal Order**), concluding that:

> 1. Petitioner's December 18, 2003 letter to DPP, along with his March 19, 2004 request for reconsideration, constituted a request for declaratory ruling, inasmuch as he asked DPP to issue a Notice of Violation citing Intervenors Ramirez for grading without permit or to reinstate a previously rescinded Notice of Violation, and noted therein a "Necessity of Immediate Action";
>
> 2. There is nothing in the record to indicate that Petitioner objected to DPP's treatment of his December 18, 2003 letter as a petition for declaratory relief or that he was an unwilling participant in those proceedings;
>
> 3. The DPP's February 18, 2004 and August 19, 2004 responses were separate orders disposing of Petitioner's petition for declaratory relief pursuant to HRS § 91-8;
>
> 4. Once DPP disposed of Petitioner's petition for declaratory relief, any appeal of such disposition would be properly before the Circuit Court, State of Hawaii, pursuant to HRS §§ 91-8 and/or 91-14;
>
> 5. Unlike decisions and orders arising from contested case hearings (HRS § 91-12), orders disposing of petitions for declaratory relief need not include written findings of fact and conclusions of law;
>
> 6. IT IS THUS HEREBY ORDERED, ADJUDGED, AND DECREED, that the Hearings Officer does not have jurisdiction over the instant matter and Petitioner's related "appeals" of the DPP's February 18,2004, August 19, 2004, and October 23, 2006 decisions, respectively.

On August 6, 2008, Grande filed a notice of appeal in the Circuit Court, challenging the Dismissal Order, as well as the February 14 [sic], 2004,[8] August 19, 2004, and October 23, 2006, actions of the DPP Director. On April 15, 2009, Grande moved to bifurcate the appeal, requesting that only the first issue, which he referred to as Count I, be considered in the first instance. On September 1, 2009, the Circuit Court granted in part and denied in part Grande's motion to bifurcate, ordering

---

[8]    The correct date is February 18, 2004.

the parties to submit briefs addressing Counts I and II on jurisdictional issues only.

After further briefing and oral argument, on January 13, 2011, the Circuit Court entered its Findings of Fact, Conclusions of Law and Order Vacating, Reversing and Remanding Appellee Henry Eng, City and County of Honolulu Department of Planning and Permitting's July 3, 2008 Findings of Fact, Conclusions of Law, and Order Regarding Jurisdiction (**Jurisdiction Order**), concluding, *inter alia*, that Hearings Officer Harimoto's Dismissal Order was in error and ordering DPP to hold a contested case hearing. The Jurisdictional Order reversed the DPP Hearings Officer's Dismissal Order and ordered, *inter alia*, that "the DPP shall hold a contested case hearing as agreed to by the DPP and [Grande] and that DPP shall appoint a hearings officer other than Mr. Harimoto to conduct the contested case hearing."

On March 28, 2012, Circuit Court entered judgment in favor of Grande and against Ramirezes, generally, and in favor of Grande and against the City for attorney's fees in the amount of $19,430.15. The March 28, 2012 judgment expressly states that "[a]ny and all remaining claims, if any, are dismissed without prejudice, including any claims currently pending in [Grande v. Fonoimoana]."

On July 27, 2012, Grande moved to amend the March 28, 2012 judgment, pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 60(a) & (b), to correct the judgment to state: "Any and all remaining claims, if any, are dismissed without

8

prejudice. This Judgment does not affect any claims currently pending in [Grande v. Fonoimoana]." Grande stated that his

> inartful drafting of the Judgment to allow for an erroneous interpretation to dismiss claims in Civil No. 03-1-2352-11 was a clerical error, was inadvertent and/or was a mistake. The Judgment as drafted does not accurately reflect the ruling of the court in this case, which was limited to claims pending in Civil No. 08-1-1604-08. In addition, this court does not have jurisdiction to dismiss claims pending before another court in a separate, though related, action.

Appellants opposed the motion, arguing that Grande was not entitled to relief pursuant to HRCP Rule 60. On October 9, 2012, the court granted Grande's motion, stating, *inter alia*:

> The Court finds, following a fresh review of the record, that none of the parties in the instant agency appeal moved this court for dismissal of the separate case Grande et al. v. Fonoimoana et al. (Civil No. 03-01-2352-1). The Court takes judicial notice that Judge Karen T. Nakasone is still presiding over that case.
> The Court finds that it is therefore inappropriate for either party to move for dismissal of Grande et al. v. Fonoimoana et al., because the matter of dismissal was never raised before the Court and was, therefore, not within the Court's contemplation.

Appellants' motion for reconsideration was denied. The Amended Judgment was entered on January 18, 2013.

II. POINTS OF ERROR ON APPEAL

Appellants raise three points of error on appeal, contending:

(1) The Circuit Court erred in entering the Amended Judgment against the Ramirezes and DLNR because they are not "appropriate parties" because they are not "implicated" by the Jurisdiction Order and they should be dismissed;

(2) The Circuit Court erred in entering the Jurisdiction Order because it reversed the hearings officer's no-jurisdiction order based on insufficiently comprehensive facts

regarding the "agreement of the parties" jurisdictional underpinnings; and

(3)    The Circuit Court erred in amending the judgment because it relieved Grande from the results of his inartful drafting, it was based on findings beyond the bounds of reason, and it was contrary to the limitations of HRCP Rule 60.

III. APPLICABLE STANDARDS OF REVIEW

> Review of a decision made by a court upon its review of an administrative decision is a secondary appeal.  The standard of review is one in which this court must determine whether the court under review was right or wrong in its decision.
> To determine if the decision under review is right or wrong, we apply the standards set forth in HRS § 91-14(g) to the agency's decision.

Kauai Springs, Inc. v. Planning Comm'n of Kauai, 133 Hawai'i 141, 163, 324 P.3d 951, 973 (2014) (citation omitted; format altered).

Hawaii Revised Statutes (**HRS**) § 91-14(g) (2012) provides:

> (g)    Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> (1)    In violation of constitutional or statutory provisions; or
> (2)    In excess of the statutory authority or jurisdiction of the agency; or
> (3)    Made upon unlawful procedure; or
> (4)    Affected by other error of law; or
> (5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> (6)    Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

> Additionally,

> [i]t is well settled that in an appeal from a circuit court's review of an administrative decision the appellate court will utilize identical standards applied by the circuit court.  The clearly erroneous standard governs an agency's findings of fact.  An agency's findings are not clearly erroneous and will be upheld if supported by

> reliable, probative and substantial evidence unless the reviewing court is left with a firm and definite conviction that a mistake has been made. The courts may freely review an agency's conclusions of law.

Kauai Springs, 133 Hawai'i at 164, 324 P.3d at 974 (citation omitted; format altered).

> An appellate court reviews a circuit court's determination of an HRCP Rule 60 motion for an abuse of discretion. An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

Buscher v. Boning, 114 Hawai'i 202, 211, 159 P.3d 814, 823 (2007) (citations, quotations, and brackets omitted)

IV. DISCUSSION

A. Appellants' First and Third Points of Error

With respect to their first point of error, Appellants contend that the Amended Judgment is "in error" because it "wrongly fails to identify claims, it takes judgment against the wrong parties, it wrongly fails to take judgment against the 'appropriate parties,' it wrongly fails to dismiss parties and claims not disposed of, and it wrongly creates exposure for uninvolved parties in contravention of contract and rulemaking laws." With this argument, Appellants assert that the Amended Judgment is defective because it does not identify "Count II."

Appellants' primary arguments disregard the nature of the proceedings before the Circuit Court in this case. As detailed above, Grande sought administrative relief from the DPP Director's rulings against him by way of a contested case hearing. The Ramirezes and DLNR sought to intervene in the contested case, their request was granted, and they actively participated in the contested case proceedings. When the DPP

Hearings Officer *sua sponte* raised the issue of subject matter jurisdiction, the Ramirezes and DLNR argued that the contested case should be dismissed for lack of jurisdiction. The DPP Hearings Officer agreed and ruled in their favor, concluding that he did not have jurisdiction to conduct a contested case hearing. Grande appealed that ruling to the Circuit Court. In their briefs to the Circuit Court, the Appellants again argued that the DPP Hearings Officer did not have jurisdiction and that his ruling should be affirmed.

Where the only issue decided on the appeal to the Circuit Court (other than the attorney's fees award against the City) was whether the DPP Hearings Officer had jurisdiction to conduct a contested case hearing, and the Ramirezes and DLNR appeared and made arguments on that issue in the agency proceedings and the Circuit Court proceedings, we find no error in the Circuit Court's entry of judgment against them. Appellants cite no legal authority to the contrary. Given Appellants' intervention before the DPP based on their arguments that the case would have a "direct impact" on them and they would be "immediately affected by an adverse decision," Appellants' argument on this appeal that they were "totally uninvolved, absolutely nominal parties" in the proceedings before the DPP Hearings Officer appears to be disingenuous. Indeed, under the applicable DPW Engineering Rules, "'[p]arty' means each person or agency properly seeking and entitled to be admitted as a party in

a hearing[9] . . . and any intervenor who has complied with Section 00-01-15 and has been admitted by the Hearings Officer as a party to the hearing." DPW Engineering Rules § 00-01-03.

Appellants' argument that the Amended Judgment is fatally defective because it does not specifically identify "Count II" is equally without merit as the Amended Judgment expressly states that any and all remaining claims, if any, are dismissed without prejudice.

Appellants' third point of error, that the Circuit Court erred in amending the March 28, 2012 judgment, is also without merit. HRCP Rule 60(a) provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." "Rule 60(a) is used 'to make the judgment or record speak the truth and . . . to make it say . . . what originally was pronounced.'" Whitman v. Whitman, 91 Hawaiʻi 468, 470, 985 P.2d 659, 661 (1999) (citing 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure*: Civil 2d § 2854, at 241 (1995)). Here, the March 28, 2012 judgment incorrectly stated that it dismissed "any claims currently pending in [Grande v. Fonoimoana]," when in fact the dismissal or other disposition of Grande v. Fonoimoana was not

_____

9       Under the DPW Engineering Rules, "Hearing" is a contested case hearing and is defined as "a proceeding for the determination of the legal rights of specific parties which is authorized by law or rules in a manner which is initiated by action taken or to be taken by the department." DPW Engineering Rules § 00-01-03.

before the Circuit Court in this case. The Amended Judgment correctly states that it "does not affect any claims currently pending in [Grande v. Fonoimoana]." As Grande submitted, and the Circuit Court agreed, the correction in the Amended Judgment was necessary and appropriate to reflect the truth of the court's ruling, which did not purport to affect the other law suit.

B.    The Jurisdictional Issue

Appellants argue that the Circuit Court erred in entering the Jurisdiction Order "based on insufficiently comprehensive facts regarding the 'agreement of the parties' jurisdictional underpinning." As is clear from the record, the Circuit Court's order reflected the court's concern about how the City proceeded in this case, and in the related case, with respect to Grande's claim that his home was endangered by the unpermitted grading on Appellants' property. With respect to Grande v. Fonoimoana, the City took the position that Grande's complaint should be dismissed for failure to exhaust his administrative remedies. So, as detailed above, based on the City's representations to Grande and to the court in Grande v. Fonoimoana as to what those remedies were, Grande sought administrative relief from the DPP Director and agreed, essentially, to hold that suit in abeyance.[10] When the DPP Director declined to take any action and denied reconsideration, it appears that the City's Corporation Counsel confirmed to Grande that the ZBA had jurisdiction to hear an appeal. However,

_____

[10]    Based on the City's representations and arguments, that case was ultimately dismissed, without prejudice, because Grande had not yet exhausted his administrative remedies.

after Grande filed his appeal to ZBA, the City's attorney then took the position that ZBA did not have jurisdiction, and moved (successfully) for dismissal of the ZBA appeal.

The City's attorney then clarified and agreed that Grande was instead entitled to a contested case hearing, as provided for in the applicable administrative rules, and that DPP was moving forward with the arrangements for the contested case hearing. The assigned DPP Hearings Officer then raised the issue of jurisdiction (with the City taking no position at the time), and dismissed the contested case hearing for lack of jurisdiction. Finally, on the appeal to the Circuit Court, the City actively argued that the DPP Hearings Officer had no jurisdiction and that his Dismissal Order should be affirmed. It was on this record that the Circuit Court noted its concern about the apparent changes in the City's legal position and the City's failure to keep its agreement to hold the contested case hearing, and ordered the City to pay Grande for attorney's fees accrued in responding to the City's arguments, as well as reversed the Hearings Officer's Dismissal Order.

However, the singular focus on that aspect of the Circuit Court's rulings disregards that the DPW Engineering Rules provide for a contested case hearing under the circumstances presented here, as the City's attorney represented and agreed when it informed Grande that a hearings officer would be appointed. In addition, as the Circuit Court noted, nothing in the DPP Procedural Rules precludes a contested case hearing, although the regulatory framework could be clearer and more user-

friendly. This complexity may stem in part from a reorganization of the City's departments.

Effective July 1, 1998, the development permitting functions from the City's former Building Department, the Department of Public Works (DPW), and the Department of Wastewater Management, along with various other functions, were transferred into the former DLU for the purpose of forming a newly titled Department of Planning and Permitting (i.e., the DPP).[11] See Departmental and Agency Reports of the City and County of Honolulu for the Fiscal Year July 1, 1998 - June 30, 1999 (1999 Departmental Reports) at 280. As part of this reorganization, DPP added a new Civil Engineering Branch, which came from the former DPW. Id. at 294.

With the reorganization (and subsequent actions), the various matters within the DPP's administrative mandate have become subject to a wide-ranging list of administrative rules, which are identified (and hyperlinked) on the DPP's website as follows:

> Department of Planning and Permitting (DPP)
> Administrative Rules
> 1. RULES OF THE BUILDING BOARD OF APPEALS
> 2. PART 1 - RULES OF PRACTICE AND PROCEDURE
> 3. PART 2 - RULES RELATING TO SHORELINE SETBACKS AND THE SPECIAL MANAGEMENT AREA
> 4. PART 3 - RULES OF THE ZONING BOARD OF APPEALS
> 5. RULES RELATING TO ADMINISTRATION OF CODES
> 6. RULES OF THE ENGINEERING DIVISION
> 7. RULES OF THE DEPARTMENT OF PLANNING AND PERMITTING FOR PROCESSING AMENDMENTS TO THE GENERAL PLAN
> 8. PART 4 - PROCEDURES FOR REVISING THE PUBLIC INFRASTRUCTURE MAP
> 9. RULES FOR PROCESSING AMENDMENTS TO THE DEVELOPMENT PLANS AND SUSTAINABLE COMMUNITIES PLANS
> 10. PROCEDURES FOR THE AMENDMENT OF STATE LAND USE

---

[11] On January 1, 1999, the functions of the former Planning Department were also merged into the new DPP. 1999 Departmental Reports at 280.

DISTRICT BOUNDARIES
11.  AFFORDABLE HOUSING RULES FOR UNILATERAL AGREEMENTS
12.  RULES OF THE PLANNING COMMISSION
13.  SUBDIVISION RULES AND REGULATIONS
14.  RULES RELATING TO STORM DRAINAGE STANDARDS
15.  RULES RELATING TO SOIL EROSION STANDARDS AND
GUIDELINES

See City and County of Honolulu Department of Planning and

Permitting, http://www.honoluludpp.org/AboutDPP/WhatWeDo/

AdministrativeRules.aspx (last visited Jan. 3, 2007).

In 1999, for example, DPP's Civil Engineering Branch

adopted the set of rules numbered "15," the new Rules Relating to

Soil Erosion Standards and Guidelines (adopted February 26, 1999)

(**Soil Erosion Rules**).  An examination of the Soil Erosion Rules,

however, confirms that these rules are of a technical nature and

are focused specifically on soil erosion standards and erosion

control practices; they do not purport to address any sort of

proceedings before the DPP or procedures related thereto.

Notably, the Soil Erosion Rules expressly repeal the prior

standards and guidelines.  Soil Erosion Rules § 1-6.

In addition, in October of 1999, the DPP amended the

DPP Procedural Rules, which had been the DLU's Rules of Practice

and Procedure prior to the departmental reorganization.  As

discussed further below, Chapter 3 of the DPP Procedural Rules

provides a means to seek a determination, *i.e.*, a declaratory

ruling, concerning the applicability of a statute, ordinance, or

rule relating to the DPP, in accordance with HRS § 91-8.  DPP

Procedural Rules § 3-1.  The DPP Procedural Rules, however, do

not set forth a general means for review of agency decisions.

However, Chapter 4 of the DPP Procedural Rules provides for

reconsideration of the Director's decision to "approve or deny an

application." DPP Procedural Rules § 4-1. Other parts of the collection of DPP rules provides other means of review, including the ZBA Rules (which are still denominated as DLU rules) and the DPW Engineering Rules (which are still denominated as DPW rules).

Notably, it does not appear that the DPW Engineering Rules were repealed, amended or renamed subsequent to the City's departmental reorganization.[12] Rather, they have been retained by the DPP, as set number "6" of the DPP's administrative rules.[13] Pursuant to this court's post-hearing order entered on February 12, 2016, the City, Grande, and the Appellants all reported to the court that there are no records or evidence to suggest that the DPW Engineering Rules have been amended or repealed in accordance with the procedures set forth in HRS § 91-3 (2012). Accordingly, with respect to the matters at issue in this case, we conclude that the DPW Engineering Rules remain in effect, as part of the DPP's administrative rules.

Subchapter 3 of the DPW Engineering Rules, entitled Procedure for Appeal from Action of the Chief Engineer, and Subchapter 4 of the DPW Engineering Rules, entitled Hearing, provide for an appeal through a contested case hearing for any person who is "specially, personally and adversely affected" by

---

[12] Similarly, the ZBA Rules are still entitled "Department of Land Utilization Part 3 Rules of the Zoning Board of Appeals." In contrast, on October 12, 2004, DPP repealed the "Rules of the Building Department Governing the Enforcement of Codes and Regulations by the Building Department of the City and County of Honolulu" (1999) and adopted "Rules Relating to Administration of Codes of the Department of Planning and Permitting," which appears as Part 4 of the DPP's Administrative Rules.

[13] See City and County of Honolulu Department of Planning and Permitting, http://www.honoluludpp.org/AboutDPP/WhatWeDo/AdministrativeRules.aspx (last visited Jan. 3, 2007).

of action of the Director and Chief Engineer of the DPW, whose authority and duties were assumed by the DPP Director with the City's departmental reorganization. Pertinent provisions of the DPW Engineering Rules include the following:

§ 00-01-12 Petition. (a) Any person who is specially, personally and adversely affected by an action of the Chief Engineer may submit a written petition to the [DPW] setting forth.

(1) The petitioner's name, mailing address, and telephone number.
(2) Identification of the location of the violation or discharge by street address.
(3) The petitioner's interest in the property or if the petitioner has no property interest, state how the petitioner is adversely affected by the action appealed.
(4) Designation of the specific applicable provision of the ordinance or rule or regulation
(5) The action of the Chief Engineer and the date said action was taken.
(6) All pertinent facts.
(7) Reasons for the appeal, including a statement as to why the petitioner believes that the Chief Engineer's action was based on an erroneous finding of a material fact, and/or that the Chief Engineer acted in an arbitrary or capricious manner, or manifestly abused his or her discretion.

. . . .

§ 00-01-14 Pre-hearing Procedure. (a) Within ten days after receipt of a petition, the department shall forward copies of the petition to all interested parties, if any, if they are not the petitioner.

(b) The department shall, upon consultation with the parties, set the date for the hearing on the appeal and the public hearing, and if written briefs are to be submitted, schedule the dates on which are due the opening brief, answering brief, and reply brief. . . .

(c) Motions to the Hearings Officer and supporting, opposing, and reply memoranda may be submitted by the parties as they deem appropriate, except that the Hearings Officer will not accept any motion or memorandum submitted less than seven days prior to the scheduled hearing date for the appeal.

. . . .

§ 00-01-15 Intervention. (a) The Hearings Officer shall consider and act upon applications to intervene.

. . . .

(c) Applications to intervene shall be disposed of as follows:
(1) Intervention shall be granted to an applicant who demonstrates that such applicant will be so directly and immediately affected by an adverse decision that such applicant's interest in the proceeding is clearly distinguishable from that of the general public.
(2) Intervention may be denied in the sound discretion of the Hearings Officer when it appears that the position of the applicant is

substantially the same as that of a party
already admitted to the proceeding.
. . . .
§ 00-01-17  Procedure. (a) The hearing shall be
conducted in conformity with the applicable provisions of
Sections 91-9, 91-10, and 91-11, Hawaii Revised Statutes.
(b)  The hearings before the Hearings Officer shall
be open to the public in accordance with the provisions of
Chapter 91, Hawaii Revised Statutes.
(c)  The hearings shall be conducted as a contested
case under Chapter 91, Hawaii Revised Statutes, as it may be
amended.

While these rules refer to an appeal from an action of

the "Chief Engineer," a pragmatic reading of the General

Provisions in Chapter 1 of the DPW Engineering Rules, in light of

the City's departmental reorganization, makes clear that the DPP

Director's actions in this case were taken in his role as

successor to the Chief Engineer of the former DPW.  Chapter 1 of

the DPW Engineering Rules provides, *inter alia*:

§ 00-01-01  Purpose of Subchapter; Statement of
Policy.  The purpose of this chapter is to establish
procedures on the implementation and enforcement of permits
by the department for drainage, flood, pollution control;
grading, soil erosion and sediment control programs; and
provisions for the public and others [to have] the
opportunity for participation.
. . . .
§ 00-01-03  Definitions.  As used in this Chapter:

"Action of the Chief Engineer" means a decision
rendered on an enforcement order or a permit pursuant to the
Drainage, Flood and Pollution Control Ordinance, Chapter 14,
Article 12, or the Grading, Soil Erosion and Sediment
Control Ordinance, Chapter 14, Articles 13 through 16, [ROH]
(hereinafter "Drainage, Flood and Pollution Control
Ordinance" and "Grading, Soil Erosion and Sediment Control
Ordinance").

"Chief Engineer" means the Director and Chief
Engineer, Department of Public Works, City and County of
Honolulu, or his duly authorized agent.
. . . .
"Hearing" means a proceeding for the determination of
the legal rights of specific parties which is authorized by
law or rules in a manner which is initiated by action taken
or to be taken by the department.

"Hearings Officer" means the person who hears and
decides an appeal of the Chief Engineer's decision. . . .

Here, the Notice of Violation issued to the Ramirezes

and DLNR for, *inter alia*, grading without a permit, was issued by

Milton T. Kono (**Kono**) for the DPP Director and cited violations of Chapter 14, ROH, Section 14-14.1(a) and 14-13.5(f). Kono also signed the designation of the violations as "corrected" based on the notation that "Miguel Ramirez, is now a cooperator with the [WOSWCD]," clearly in reference to the exclusion stated in ROH § 14-13.5(d). See, supra, n.2. After Grande's attempt to get judicial relief in Grande v. Fonoimoana was rejected on the grounds of failure to exhaust administrative remedies, Grande's December 18, 2003 letter to the DPP Director sought enforcement action by the DPP based on alleged violations of over thirty requirements of the City's grading ordinance, ROH Chapter 14, Articles 13-16.

Although characterized by the City as a request for declaratory ruling pursuant to Chapter 3 of the DPP Procedural Rules, Grande was clearly seeking action by the DPP, not solely a declaration. Chapter 3 of the DPP Procedural Rules, which was repeatedly referenced by the City, is entitled "Declaratory Rulings" and provides in part:

> § 3-1 Who may petition. Any interested person may petition the director for a declaratory ruling as to the applicability of any statute or ordinance relating to the department, or of any rule or order of the department.

There was, arguably, no question or controversy as to whether the subject ordinances applied to the grading of the Landfill by the Ramirezes. Grande's letter complaint is replete with citations to applicable ordinances, as well as his requests that DPP enforce them and the factual grounds for enforcement. Indeed, the February 18, 2004 decision on behalf of the DPP Director assumes the applicability of the ordinances and

21

addresses the facts, determining, *inter alia*, that "there is insufficient information for the City to conclude that the landfill endangers abutting properties or alters the general drainage pattern with respect to abutting properties" and that the grading of the Landfill is subject to the jurisdiction of WOSWCD in accordance with ROH Chapter 14, Article 13. Grande's March 19, 2004 request for reconsideration similarly requested action by the City, *i.e.*, that the City assume jurisdiction over the Landfill and undertake enforcement action, based on additional evidence submitted by Grande. The DPP Director's August 19, 2004 decision denying reconsideration again determined that the evidence was insufficient and refused to take any enforcement action, deferring to WOSWCD, pursuant to the applicable ordinance.[14]

The DPP Director's October 23, 2006 rejection of any further reconsideration of Grande's original complaint, based on supplemental information provided by Grande, explained that "[t]he City has a long-standing practice of considering a grading Notice of Violation (NOV) moot, if Section 14-13.5 Exclusions (City revised ordinances) is [sic] or can be made to be applicable to a situation" and informed Grande that the City "rendered Mr. Ramirez's NOV moot and the file closed."

In light of the above, we conclude that the DPP Director's decision rejecting Grande's request for enforcement of

---

[14] As the Hearings Officer did not reach the merits of the DPP Director's decision, we express no opinion as to whether the requirements set forth in either the first part or the second part of the applicable ordinance, ROH § 14-13.5(d), have been met.

ROH Chapter 14 was an action of the DPP Director in his role as the successor to the Chief Engineer, as described in DPW Engineering Rules § 00-01-03, even if it also could be construed as a declaratory ruling. In addition, we conclude that the contested case hearing procedures set forth in Subchapters 3 and 4 of the DPW Engineering Rules, on the petition of "[a]ny person who is specially, personally and adversely affected by [such] action," were intended to provide an administrative remedy to persons such as Grande under the circumstances of this case. DPW Engineering Rules §§ 00-01-01, 00-01-03, and 00-01-12. Indeed, the DPW Engineering Rules also provide for the intervention by "an applicant who demonstrates that such applicant will be so directly and immediately affected by an adverse decision that such applicant's interest in the proceeding is clearly distinguishable from that of the general public." DPW Engineering Rules § 00-01-15. Notably, Appellants argued that this provision applied to them and they were granted intervenor status in the contested case hearing pursuant to this provision.

We conclude that the Hearings Officer erred when he disregarded the administrative remedies provided in the DPW Engineering Rules for a person who is adversely affected by an action of the DPP Director exercising his powers as the successor to the Director and Chief Engineer of the DPW, and focused solely on the City's treatment of Grande's complaints as petitions for declaratory relief, while ignoring or rejecting the City's treatment of the DPP Director's decision, as an action subject to

23

the contested case hearing rules. Thus, we also conclude that the Hearings Officer erred when he concluded that he did not have jurisdiction to review the DPP Director's decision - as set forth in his February 18, 2004, August 19, 2004, October 23, 2006 letters - not to assume jurisdiction over the Landfill and undertake enforcement action.

Appellants' arguments to the contrary are unavailing. Appellants argue that there could be no "agreement of the parties" regarding a contested case hearing because they were parties and they did not agree. This argument ignores, however, that the contested case was initiated, pursuant to DPW Engineering Rules §§ 00-01-12 and 00-01-14, prior to their intervention, pursuant to DPW Engineering Rules § 00-01-15. While the City and Grande "agreed" to the conduct of a contested case hearing to review the DPP Director's actions concerned alleged grading violations, the treatment of this remedy as an "agreement" is overemphasized, as it fails to acknowledge that the DPW Engineering Rules provide for a contested case hearing.[15] Appellants further argue that there is no rule recognizing the existence of a contested case hearing procedure following a declaratory ruling. While apparently recognizing the DPP Director as the successor to the DPW Chief Engineer in otherwise administering, enforcing, and interpreting ROH Chapter 14, Appellants do not acknowledge or accept the continued applicability of the DPW Engineering Rules. Appellants cite no

_____

[15] Accordingly, we need not address Appellants' argument that this "agreement" is not enforceable pursuant to the law of contracts.

authority barring administrative review of an agency decision by contested case hearing pursuant to duly promulgated rules, even if the decision is in the nature of a declaratory ruling, and we find none. Arguably, absent proceeding in accordance with the DPW Engineering Rules providing for a contested case hearing, Grande would have failed to exhaust all available administrative remedies. See Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of Honolulu, 114 Hawai'i 184, 196-97, 159 P.3d 143, 155-56 (2007); Kona Old Hawaiian Trails Group By & Through Serrano v. Lyman, 69 Haw. 81, 91-92, 734 P.2d 161, 167-68 (1987).

Accordingly, we conclude that the Circuit Court correctly concluded that the Hearings Officer erred in his determination that he lacked subject matter jurisdiction, albeit for different reasons. See Survivors of Medeiros v. Maui Land & Pineapple Co., 66 Haw. 290, 293, 660 P.2d 1316, 1319 (1983).

V.   CONCLUSION

For the reasons set forth above, we affirm the Circuit Court's January 18, 2013 Amended Judgment; as ordered by the Circuit Court, this case is remanded to the DPP for the conduct of a contested case hearing before a new hearings officer.

DATED: Honolulu, Hawai'i, January 20, 2017.

On the briefs:

Thomas R. Grande
for Appellant-Appellee

Allan F. Suematsu
for Appellees-Appellants

Winston K.Q. Wong
Deputy Corporation Counsel
for Appellees-Appelles

Presiding Judge

Associate Judge

Associate Judge